We hear argument next in Pettibone v. Russell. We hear argument next in Pettibone v. Russell. Mr. Springer. Good morning, Your Honors, and may it please the Court, Brian Springer on behalf of Appellant Gabriel Russell. I'd like to reserve three minutes for rebuttal and I'll keep my eye on the clock. The district court wrongly created a novel Bivens cause of action for a senior executive official's alleged oversight of a federal operation to protect federal property and personnel amidst ongoing civil unrest in Portland, Oregon. Plaintiff's allegations in this case plainly present a new context as compared to the three cases in which the Supreme Court has recognized a Bivens remedy. And there are several reasons to think that Congress should be the one to decide whether to fashion a new damages action in these circumstances. The district court's ruling was incorrect before the Supreme Court issued its decision in Egbert, but Egbert confirms the errors in the district court's analysis. In Egbert, a line-level Border Patrol agent allegedly violated the Fourth Amendment in the course of investigating possible immigration violations. The Supreme Court nonetheless ruled that a Bivens action could not proceed in that circumstance even though the excessive force allegations at issue were similar to those at issue in Bivens. The Supreme Court emphasized that prescribing a cause of action is a role for Congress, not for the courts in the usual course. I want to take you back to sort of an earlier question, which is really whether or not we should hear this. Do we have jurisdiction? In other words, counsel, I think, cites Mejia, that Mejia perhaps was wrongly decided, which is a decision from our court last month. But when you look at the analysis, does she have a point? Your Honor, I don't think that – I think that Mejia controls here, and I think that Mejia also is consistent with a number of this court's other cases, including the Rodriguez case, the Ministerio Rocasoleta case, which all recognize that in a circumstance like this, where there's an appeal from a denial of qualified immunity, the Court of Appeals has jurisdiction to also address whether there's a Bivens cause of action in the first instance. And that follows directly from the Supreme Court's Wilkie case and is the same conclusion that all other circuits to have addressed this issue have come to, at least in this set of circumstances where there's the Bivens question is accompanying an appeal from a denial of qualified immunity. How does Mejia then intersect or become reconcilable with that earlier case of the Ministerio Rocasoleta? Your Honor, I think that they're consistent with each other. Ministerio Rocasoleta recognized that when there's a denial of qualified immunity, by necessity an appeal from that also raises the question of whether there's a cause of action in the first instance. All of these cases are consistent with each other and consistent with the Supreme Court's decision in Wilkie. And why, I mean, I take the point about Wilkie, but why is that a sensible rule? I mean, immunity, we allow an interlocutory appeal because immunity is immunity from suit, not just from judgment, and so it's lost if you don't get to appeal right away. But this is a question of whether the cause of action extends to a particular case. I mean, that seems sort of like the kind of merits question that we routinely say has to await a final judgment. So why should it be different? Your Honor, I think it follows directly from the Supreme Court's decision in Hernandez that says that this is an antecedent question and that in Egbert the Supreme Court also emphasized that like the denial of qualified immunity, recognizing a Bivens cause of action places great stress on the separation of powers. All of these questions are about whether or not we should subject an individual federal officer to a damages action. And in the first instance, if at the outset there shouldn't be a cause of action at all, it makes sense to address that question at the threshold instead of allowing something to go forward that shouldn't have gone forward, you know, to begin with. Your Honor, if there are no further questions about the jurisdictional issue, I can move to the Bivens analysis. So as I mentioned, the Supreme Court's recent decision in Egbert is helpful here. In that case, it involved a line-level agent. Our case does not involve a line-level agent. This was a high-ranking officer who was overseeing a federal operation to protect federal property and personnel in Portland amidst ongoing civil unrest. There are numerous ways in which this case is different from a warrantless search and seizure in a private home that was at issue in Bivens, and that's the only Supreme Court case that involved Fourth Amendment, alleged Fourth Amendment violations in the Bivens context was Bivens itself. I would also like to just emphasize the numerous special factors that we have at issue here. I mean, I think one of the things that's striking is that this case presents a significant intrusion into the operations of the executive branch. This was an interagency operation in which Director Russell was coordinating the federal response across numerous agencies. He was also implementing executive policy that was embodied in an executive order. And as we've noted, he was not a line-level agent. Instead, his liability here is based on a supervisory theory about him sort of being in the control center and watching over what was happening in Portland as it was going on. And those are all different ways in which this is different from the Bivens context. I would also just note as well that this case, as we mentioned in our brief, has received extensive attention from both of the political branches. There have been numerous investigations into the conduct at issue here, and Congress itself has had hearings and legislative proposals on these things. And those provide reasons to think that Congress should be the one to make the decision about whether a new damages action should proceed in these circumstances. And as far as those investigations go, how significant is it? You mentioned the IG is investigating or has investigated. How significant is it that the IG has in fact conducted an investigation as opposed to the mere fact that the IG is there and has the authority to conduct an investigation? Do you think the mere existence of the IG is enough? I think the mere existence is likely enough. The cases talk about the availability of alternative remedies, and here plaintiffs have the ability to submit complaints to the Office of the Inspector General in order to allow an investigation to go forward. I think here the court doesn't have to get into that specific question because there have been investigations conducted, some of which are still ongoing, into this conduct. So can you imagine any example of a case that would involve a new context beyond Bivens where you think there wouldn't be special factors leading to the conclusion that Congress, rather than the judiciary, should be the one to recognize a Bivens cause of action? Your Honor, I don't have a specific example off the top of my head. I think that the Supreme Court in Egbert has made clear that in general these types of causes of action shouldn't go forward unless they look very similar to Bivens or Davis or Carlson, one of these previous cases in which the Supreme Court has recognized a Bivens remedy. So I don't have a specific example, but I think to the extent that a case looks almost on point with one of those, that might be an example where a Bivens cause of action could go forward, but otherwise— But then that wouldn't really be a new context, would it? I mean, if it looks like Bivens, then it's not really a new context. It's just more Bivens. Your Honor, there could be cases in which it presented a new context if the facts were slightly different but if it still didn't implicate some of these other factors that the Supreme Court has identified as special factors. Well, I think in his concurrence, Justice Gorsuch basically said that court shouldn't be holding out false hope to litigants and people like us in the lower courts as trying to figure out if there is such an action. So you're saying there could be somewhere in the interstices some narrow type of action that could still fit within the Bivens remedy, but you can't identify it at this point. That's correct, Your Honor. I think that it would need to be analyzed on its own facts. I mean, I think that the Supreme Court in Egbert, because it didn't follow the course that Justice Gorsuch suggested, suggests that at least there are some Bivens causes of action that may go forward, but they made clear that it's— So the door is not totally closed. We just don't know how tight it is at this point. Well, Your Honor, I think the court made clear that it is very tight, but it may be the circumstance that in a very particular case that doesn't— I mean, I think the important thing here is that there are numerous reasons to think that allowing these claims to go forward would interfere with the functioning of the executive branch in a way that suggests that this is not an appropriate circumstance in which to recognize or imply a Bivens cause of action. Your Honors, if there are no further questions, then I will reserve the remainder of my time. Thank you. Ms. Lee. Thank you, Your Honor. Good morning. May it please the Court, my name is Rachel Lee on behalf of the appellants. This appeal arises from a federal supervisor, Mr. Russell, who watched night after night as subordinates under his control repeatedly violated the Fourth Amendment rights of protesters, and his orders and inaction led to the egregious violations of plaintiffs' own Fourth Amendment rights. So there are three issues here today. First, does Mr. Russell, as a supervisor, have qualified immunity? Second, does the Court have appellate jurisdiction in this interlocutory appeal to decide whether or not a Bivens remedy is available, and if the Court does, then is a Bivens remedy available? And I'm prepared to answer or address all of those questions today, but I'd like to start briefly with the Mejia opinion, which we submitted a 28-J letter about. So new counsel has appeared from Ms. Mejia in that case and obtained an extension of time until the end of January to file a petition for rehearing. The Mejia opinion is a strong candidate for rehearing for several reasons, including that it creates an intra-circuit conflict with Wong, Pelletier, and Todd on the appellate jurisdiction question, and I'm not sure that the panel in Mejia even recognized that it was doing so because the issue was not briefed or argued there. Mejia's Bivens analysis also appears to contradict this Court's decision in Quintero Perez and Supreme Court case law. And I'm happy to discuss those issues, but... Let's stop there. You indicate that there might be a filing for a petition, but Mejia is controlling law now. What does this Court do? Even if we were to agree, I'm not saying that we do, but even if we were to agree with your analysis, Mejia is controlling, so don't you lose on the jurisdictional issue there? Well, Your Honors, Mejia is in place right now, but I'd make a couple of points. First of all, there's no particular urgency to decide this case immediately, and so we'd ask you not to reach the Bivens-related questions, the jurisdictional questions until... On the possibility that the Court might rehear that, and then on the possibility that they might reverse themselves, and then on the possibility that the Court would take that on Bonk. So what are we talking about? We're going to wait a year to decide this case? I don't believe that it will take a year to determine whether or not a petition for rehearing is filed, and for Your Honors to evaluate whether or not you believe that it is a strong candidate. But I would also point out that... That's really not our province to evaluate that. I mean, that's the province of the entire Court, not a three-judge panel. So it seems our options would be decide the case. Then, of course, there's always the option for a petition for rehearing by either side. We could either decide the case or we could decide to defer it. But as Judge Mendoza said, that could put it into unknown oblivion. So if Your Honors decide the case on the qualified immunity grounds and reverse the District Court on qualified immunity, although we don't believe that you should do so, we don't believe that Mr. Russell has qualified immunity, but if you resolve this appeal on qualified immunity, then you will not need to reach the appellate jurisdiction question or Bivens. And second, if you do reach the appellate jurisdiction question, you will be faced with two lines of binding precedent, because Wong, Pelletier, and Todd are still on the books. They have not been formally overruled by any standing precedent of this Court, including Mejia. Mejia does not address them. It doesn't cite them. It doesn't say that they're clearly irreconcilable with Wilkie or with anything. So Your Honors are faced with two lines of binding precedent, and you at that point will not have the power to choose between those, and I believe it would be your obligation to seek an en banc. Well, or we could say what perhaps the Mejia Court might have been better if they had said explicitly, which is that all of those, Wong, Pelletier, and the third case you mentioned, all preceded Wilkie, and Wilkie's footnote 4 does seem to be irreconcilable with them. So maybe you could address Wilkie and explain why doesn't that abrogate those earlier cases. Certainly. So the obligation on this Court is, if possible, to reconcile prior precedent with Supreme Court case law. And the prior precedents of Wong, Pelletier, and Todd can be reconciled with the footnote in Wilkie under the ordinary principles of pendent appellate jurisdiction, as we laid out in our answering brief, and which Mr. Russell in his reply brief does not attempt to rebut. The footnote Wilkie was, in fact, an instance of pendent appellate jurisdiction where, under the facts of that case, the qualified immunity question and the Bivens question were inextricably intertwined. And therefore, that was a case in which the pendent appellate jurisdiction, as it ordinarily applied, would have allowed the Sixth Circuit, pardon me, the Tenth Circuit, to reach the Bivens question on an interlocutory appeal. Although it did not, Wilkie is not. The Bivens question was answered from a final judgment, not an interlocutory appeal. But that's not normally how we read Supreme Court cases, right? I mean, Wilkie doesn't say anything about pendent appellate jurisdiction. So why is it appropriate for us to say, well, they said this one thing, but they could have gotten to the same result on some other theory, and therefore we'll treat as dicta the actual language that they used? Why would we say that? It's not that we're treating it as dicta because of the language that they used.  to their analysis and to the circumstances before them. They had jurisdiction over it, regardless of whether it was an interlocutory appeal, because the Supreme Court's jurisdiction is not restricted to final decisions under 28 U.S.C. 1254. But the reason that you would read it, that you would go to some effort to read it, as consistent with Wong, Pelletier, and Todd, is because under Miller v. Gami and that line of precedent, it is this court's obligation, if possible, to reconcile the cases, and only if they can't be reconciled to deem the prior case law of this court to be overruled. And so even if there is tension between them, this court sees it as its duty to see whether they can be reconciled, and here they can by interpreting that footnote as an application of the ordinary principles of pendant appellate jurisdiction. I'd also note that in the Ministerio Roco-Solida case, this court, in fact, specifically characterizes Wilkie in a parenthetical as holding that you can reach Bivens where the Bivens question is directly implicated by qualified immunity. It does not state that it will always be that case. It says, by necessity, in the case before it, they were implicated because of the specific facts of the Ministerio Roco-Solida appeal, which we explain in our briefing. So the case laws all can be reconciled. If they can be reconciled, it is the duty of this court to do so, and the prior cases, Wong, Pelletier, and Todd, stand as binding precedent unless they are clearly irreconcilable. But if we do have jurisdiction counsel addressing the Bivens issue, isn't this just clearly a new context, and why should this court be better suited than Congress to create this remedy? Your Honor, in the event that you do reach the Bivens question, we disagree that it is a new context. This is the same type of Fourth Amendment claims that were raised in Bivens itself, search and seizure and excessive force. Those were the claims present in Bivens itself. This is the same type of class of defendant as in Carlson. It is a supervisor, and it was the chief medical officer. But it's a different rank, right? It was a different rank, not the exact as we've seen in Bivens, for example. The rank of the supervisor in the Carlson case is the chief medical officer, so he is overseeing the medical care provided by subordinates within the prison. And here we have Mr. Russell, who is overseeing the actions of federal agents. He's on the ground in Portland overseeing the actions of federal agents in responding to the protests. Now, they don't have the same, like, nameplate on their door of their office, but I don't believe that within the meaning of Bivens that that's a meaningful difference. They are not high executive officials. They are intermediate supervisors of line-level agents. Counsel, but that analysis would, under that analysis, wouldn't you be able then to go after Secretary Wolf under that analysis that you just made because he would just be a supervisor? It's a higher rank supervisor, but supervisor, all supervisors are the same. I mean, is that what we're going to do here? Mr. Wolf was at the time ostensibly the acting secretary of the Department of Homeland Security. I don't believe that the rank of someone who is occupying the office of secretary of one of the 15 executive departments is. Under your analysis, though, how are we differentiating the two if it's just a supervisor? Your Honor, I don't think we need to figure out exactly where the line is drawn between an intermediate supervisor and someone acting as the head of a cabinet-level department. But in any event, that question is not here before you today because the district court did, in fact, dismiss the claims against Mr. Wolf. So one of the other factors in Ziegler about defining what a new context is is the generality or specificity of the official action. And here, I mean, in addition to the point Judge Mendoza made about Mr. Pettibone's or Mr. Russell's rank, is the official action was sort of fairly high-level policy judgment about what to do over the course of some weeks or months, right? So isn't that different from Bivens or even Carlson? No, Your Honor. I disagree with that respectfully because the action that's being challenged of Mr. Russell, Mr. Russell's conduct that's being challenged in the Bivens claim is not the overall policy. It's his inaction and his orders in implementing the policy. It's his specific conduct of failing to prevent his subordinates from continuing to violate the Fourth Amendment rights of protesters by using excessive force against them. Similarly, the level of generality is similar to that in Carlson where the conduct of the chief medical officer was that he failed to give direction. He failed to provide direction to his subordinates about how to respond to medical emergencies when there was no physician present. And so that could be viewed as it is a similar level of generality in failing to give guidance to the subordinates to allow them to act lawfully and to prevent constitutional violations. But that, I mean, that is sort of stated. I mean, I think we've had a whole series of questions here about the level of generality at which you characterize the case. And you want to say at a high level of generality it looks just like Bivens. And if you look at the more granular level, it looks different from Bivens. And I guess the question, my question is, doesn't Egbert strongly suggest that we're supposed to look at a very granular level in seeing how much this resembles the three cases in which the court has recognized Bivens' action? Again, respectfully, Your Honor, no, because Egbert doesn't actually touch the new context analysis, this first step of the Bivens analysis. It was apparently conceded by the parties in Egbert, I believe, that it was a new context. And in any event, if you look at the Supreme Court's analysis, it focuses on the second prong, the special factors. And so it is not providing instruction as to the first step of the new context analysis. And, indeed, it affirms that the prior case law remains good law when it comes to the, when it addresses the First Amendment claim. It reiterates that, you know, plaintiffs need to satisfy the prior precedent and step through the analysis as doctrine has developed over the last several decades. So I think we are looking at this at an appropriate level of granularity. And it is, in fact, analogous to both Bivens and Carlson. And so this is, I believe, not a new context. In addition, I see I have only a few more moments here. We do not believe that Mr. Russell enjoys qualified immunity here for the reasons set forth in our brief, and that doesn't really appear to be significantly at issue here today, at least in the oral argument. We'd ask you to affirm the district court, unless there are any further questions. Thank you very much. Mr. Springer. Thank you, Your Honors. I'd just like to make a few very quick points. On the jurisdictional issue, I'd just like to say that I don't think there's any basis to graft an appendant appellate jurisdiction theory onto Wilkie or onto this court's cases. This court, not only in Medja, but in Rodriguez and in Ministerio Rocasolida, recognized that as a categorical matter under the collateral order doctrine, the question of whether a Bivens cause of action can be recognized as one that can be over which the court of appeals has interlocutory jurisdiction on an appeal from a denial of qualified immunity. As on the specific question of whether to recognize a Bivens remedy, I think it's correct that the level of generality here matters and that when you look at this in the granular way that Egbert suggests that you're supposed to, this case plainly presents a new context, and I've iterated the many special factors that suggest that Congress should be the one to make the decision whether to recognize a new damages action here. And, of course, we stand by what we said in our briefs about the denial of qualified immunity that Mr. Russell is entitled to qualified immunity here. Unless the court has any other questions, we would ask that this court reverse the district court's decision. Thank you. Thank you, counsel. We thank both counsel for their helpful arguments, and the case is submitted.
judges: McKEOWN, MILLER, UNKNOWN